UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DONROY GHOST BEAR, | ) | CIV. 12-5004-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## INTRODUCTION

Donroy Ghost Bear was sentenced in the District of South Dakota,

Western Division, on February 18, 2009, and is currently serving a federal

prison sentence. See generally CR Docket 06-50095.[1] Mr. Ghost Bear has now

filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to

28 U.S.C. § 2255. See CIV. Docket No. 1. The government filed a motion to

dismiss, arguing that Mr. Ghost Bear is not entitled to relief. See CIV. Docket

No. 13. The district court, the Honorable Karen E. Schreier, referred Mr. Ghost

Bear's petition to this magistrate judge for a recommended disposition

pursuant to 28 U.S.C. § 636(b)(1)(B). See CIV. Docket No. 17.

---

[1] Citations in this opinion will specify CR Docket or CIV Docket.
Mr. Ghost Bear's underlying criminal case was CR 06-50095. This § 2255
motion is a separate civil case, CIV 12-5004.

1

## FACTS AND PROCEDURAL HISTORY

The following recitation includes only those facts relevant to the claims raised in Mr. Ghost Bear's § 2255 motion. Additional facts are discussed in the body of the opinion as needed.

Petitioner, Donroy Ghost Bear, was indicted on November 15, 2006.[2] The indictment consisted of ten counts charging Mr. Ghost Bear and four other named defendants with multiple offenses including conspiracy to distribute cocaine, possession with intent to distribute cocaine, and distribution of cocaine. See CR Docket No. 1. Mr. Ghost Bear was arrested on January 30, 2007, and brought before the magistrate judge, the Honorable Marshall P. Young, for an arraignment, initial appearance, and detention hearing. Judge Young found that Mr. Ghost Bear was eligible for court-appointed counsel and appointed Jody Speck as CJA counsel. Based on Judge Young's findings, Mr. Ghost Bear remained detained. See CR Docket No. 17.

On February 26, 2007, Terry Pechota filed a notice of appearance stating that Mr. Ghost Bear had retained him to represent Mr. Ghost Bear in all future proceedings. CR Docket No. 27. The following day, Mr. Pechota filed a motion for reconsideration of release. CR Docket No. 30. This motion was originally

---

[2] On April 19, 2007, a superseding indictment was filed. This new indictment added additional charges against Mr. Ghost Bear's co-defendants but did not present additional accusations against Mr. Ghost Bear. CR Docket No. 47.

2

denied, but Judge Young later released Mr. Ghost Bear to attend treatment for substance abuse.  CR Docket Nos. 34 and 43.

On July 6, 2007, a motion to substitute counsel was filed.  CR Docket No. 130.  The motion requested that Steven Jay Rozan be permitted to represent Mr. Ghost Bear, as well as one of Mr. Ghost Bear's co-defendants.  Mr. Pechota filed a motion to withdraw.  CR. Docket No. 135.  After Mr. Ghost Bear expressly waived any conflict of interest that would arise from Mr. Rozan's joint representation of co-defendants, the district judge, the Honorable Richard H. Battey allowed Mr. Rozan to represent Mr. Ghost Bear and allowed Mr. Pechota to withdraw.  CR Docket Nos. 151 and 152.

On October 22, 2007, Rozan filed a motion to dismiss the indictment against Ghost Bear for lack of jurisdiction, arguing that the prosecution of Ghost Bear was in violation of the 1868 Treaty of Fort Laramie because the government had not first provided the Tribe with notice of the prosecution or met the requirement of proof as imposed by the terms of the Treaty.  CR Docket No. 194.  Judge Battey noted that Eighth Circuit case law clearly contravenes this argument and denied the motion.  CR Docket No. 212.

After a number of discovery motions and continuances, Mr. Ghost Bear entered into a plea agreement which was filed with the court on November 3, 2008.  CR Docket No. 293.  Under the terms of the plea agreement, Mr. Ghost Bear agreed to plead guilty to Count I of the superseding indictment charging

him with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). Mr. Ghost Bear faced the following penalties: a mandatory minimum sentence of ten years incarceration with a maximum term of life; a $4,000,000 fine; or both; a period of five years supervised release; and up to five years additional supervised release upon revocation. He was also required to pay $100 to the victims assistance fund. Restitution was discretionary.

The plea agreement further provided as follows:

D. RECOMMENDATION(S) REGARDING SENTENCE: The United States agrees that it will, unless there is significant evidence disclosed in the presentence investigation to the contrary, recommend that the Court find that the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, and in recognition thereof, in accordance with U.S.S.G. § 3E1.1(a), reduce the defendant's offense level by two levels.

The United States and the defendant also recognize that pursuant to U.S.S.G. § 3E1.1(b), the defendant may qualify for a further decrease if the offense level is level 16 or greater. If it is determined that the offense level is 16 or greater, and assuming U.S.S.G. § 3E1.1(b) applies, the United States will join the defendant in asking the Court to reduce the defendant's offense level by an additional one level.

The United States further agrees that it will recommend that the Court consider imposing a sentence of imprisonment within the appropriate guideline range, and consistent with the minimum mandatory sentence as determined by the Court on the basis of the presentence investigation report and any evidence submitted at the sentencing hearing.

4

The defendant understands and agrees that these recommendations are conditioned upon the defendant's full, complete, and truthful disclosures to the United States Probation Office.

E.    STIPULATED OFFENSE LEVEL: It is further understood that in connection with the defendant's plea and sentencing, the United States and the defendant stipulate that the base offense level upon which the defendant's sentence is to be initially calculated, pursuant to U.S.S.G. § 2D1.1(c)(4) is 32; in that the offense involved between 5 kilograms and 15 kilograms of cocaine.

The United States and the defendant are free to present argument and evidence to the Court as it relates to any proposed adjustment to the defendant's guideline rage pursuant to U.S.S.G. § 3B1.1, Leadership Role.

The defendant understands that this stipulation is not binding upon the Court and that the defendant may not withdraw his plea if the Court does not follow this stipulation.

The parties also filed a Statement of Factual Basis, which Mr. Ghost Bear signed.    Docket No. 294.  This document stated in pertinent part:

In 2001, Ghost Bear became involved with a group in Pine Ridge [South Dakota] was [sic] selling cocaine.  Ghost Bear would travel to Denver, Colorado, or would send a courier to Denver to deliver cash and return with cocaine.  He also distributed cocaine on the Pine Ridge Indian Reservation on his own behalf.

Ghost Bear's involvement with the conspiracy lasted until 2001 over which time he and others brought in excess of 5 kilograms of cocaine to South Dakota.  Cocaine is a Schedule II controlled substance.

Id.[3]

Finally, the parties filed a Plea Agreement Supplement, detailing Mr. Ghost Bear's promise to cooperate with the government. CR Docket No. 295. This document explains that the government would evaluate Mr. Ghost Bear's cooperation to decide whether to file a motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure following sentencing. Rule 35(b) provides: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." FED. R. CR. P. 35(b). The Plea Agreement Supplement expressly states: "The United States Attorney shall be the sole judge as to whether the defendant's cooperation so qualifies. This section is not a promise or a guarantee that a Rule 35(b) motion will be filed." CR Docket No. 295.

Mr. Rozan filed a motion requesting that Mr. Ghost Bear remain on bond pending sentencing. CR Docket No. 302. The government did not object to Mr. Ghost Bear's continued release post-plea. CR Docket No. 305. Mr. Ghost Bear entered a plea of guilty to Count I of the Superseding Indictment on

---

[3]There is a discrepancy between the Statement of Factual Basis and the presentence investigation report. The Statement says that Mr. Ghost Bear was involved in the conspiracy until 2001. The presentence investigation report, allegedly reciting the facts from the Statement, alleges that Mr. Ghost Bear was involved in the conspiracy until "2007." See Presentence Investigation Report at ¶ 6. Neither party objected to this paragraph in the PSI.

November 18, 2008, and remained released on bond.  CR Docket No. 306.

In preparation for sentencing, Mr. Ghost Bear met with a probation officer who was assigned to conduct his presentence investigation.  Based upon her interview with Mr. Ghost Bear, a review of the plea agreement and accompanying documents, the probation officer prepared a presentence investigation report, which is discussed in detail below.  Mr. Rozan objected to the presentence investigation report, arguing that Mr. Ghost Bear's sentence should be reduced because he accepted responsibility.  Mr. Rozan also objected to an enhancement in the report for Mr. Ghost Bear's role as an organizer, leader, manager, or supervisor.  Finally, Mr. Rozan argued that Mr. Ghost Bear was eligible for a reduction pursuant to U.S.S.G. §5C1.2(a), also known as the "safety valve."  See CR Docket No. 317.

At the sentencing hearing, the district court, the Honorable Richard H. Battey, Senior Judge, found that Mr. Ghost Bear had not fully accepted responsibility.  Additionally, the trial court applied an enhancement based upon Mr. Ghost Bear's leadership role, so he was not eligible for the "safety valve."  Mr. Ghost Bear was sentenced to serve a term of imprisonment of 151 months followed by a five-year term of supervised release.  CR Docket Nos. 322, 324.

On appeal, the Eighth Circuit affirmed Mr. Ghost Bear's conviction. CR Docket Nos. 360, 361, 363.  The Supreme Court denied Mr. Ghost Bear's

petition for a writ of certiorari. CR Docket No. 367. Currently pending before the court is Mr. Ghost Bear's petition pursuant to 28 U.S.C. § 2255.

## DISCUSSION

**A. Habeas Relief Under 28 U.S.C. § 2255 for Federal Prisoners**

Section 2255 of Title 28 of the United States Code provides as follows:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authority authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (2008).

As the statutory text illustrates, a § 2255 motion is available only to prisoners in federal custody and must be brought in the same court that imposed the sentence now under challenge. See id. Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the records in the underlying criminal cases were often in distant locations. United States v. Hayman, 342 U.S. 205, 212-17 (1952).

When considering a petitioner's § 2255 motion, the district court must

hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. Accordingly, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (additional citations and quotation marks omitted); see also Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001).[4]  The court must appoint counsel to represent a financially eligible defendant in any post-conviction evidentiary hearing deemed necessary by the court.  Green v. United States, 262 F.3d 715, 716 (8th Cir. 2001) ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A" (quoting Rule 8(c) of the Rules Governing § 2255 Proceedings)).  As evidenced by the plain language of Rule 8(c), a § 2255 petitioner is only entitled to court-

---

[4] The Eighth Circuit reviews a lower court's decision to deny an evidentiary hearing for abuse of discretion.  Saunders, 236 F.3d at 952.  "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates [the Eighth Circuit] to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo."  Id.  (internal citations omitted).  The Eighth Circuit considers the validity of the petitioner's claims in order to decide if the petitioner is entitled to an evidentiary hearing in the district court.  Id.  If the Eighth Circuit determines "from the motion and the supporting record in the case that [petitioner] is not entitled to § 2255 relief, then no hearing was, or is now, required."  Id.

appointed counsel <u>if</u> he is deemed financially eligible pursuant to

§ 3006A.  <u>See</u> 18 U.S.C. § 3006A(a)(2)(B) ("Whenever the United States

magistrate judge or the court determines that the interests of justice so

require, representation must be provided for any financially eligible person

who–...(B) is seeking relief under section 2241, 2254, or 2255 under title 28.").

**B.  Timeliness**

Motions under § 2255 are subject to a one-year statute of limitation that

runs from the *latest* of four specified dates.[5]  Only one date is relevant here–the

date on which Mr. Ghost Bear's conviction became final.  A judgment is

deemed final "where the judgment of conviction was rendered, the availability

---

[5] Section 2255(f) reads as follows:

(f)  A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of–

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied...]." <u>United States v. Johnson</u>, 457 U.S. 537, 543, n.8 (1982) (internal citation omitted); <u>see also</u> <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003). The time for filing a petition for certiorari is 90 days after entry of the Court of Appeals' judgment. <u>Clay</u>, 537 U.S. at 525. For the purpose of starting § 2255's one-year limitation period, "[f]inality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." <u>Id.</u> at 527.

Mr. Ghost Bear's judgment of conviction was entered on February 19, 2009. CR Docket No. 324. On February 24, 2009, he filed a notice of appeal to the Eight Circuit. CR Docket No. 328. The Eighth Circuit affirmed his conviction and sentence and entered judgment to that effect on July 21, 2010, and the mandate on August 12, 2010. CR Docket Nos. 361 and 363. Mr. Ghost Bear then sought relief from the Supreme Court, filing a petition for a writ of certiorari on October 19, 2010. CR Docket No. 366. On February 22, 2011, the petition for writ of certiorari was denied. On January 20, 2012, Mr. Ghost Bear filed this petition for writ of habeas corpus. The court finds that the motion was timely filed within the one-year limitation period and therefore addresses the merits.

**C.    Ineffective Assistance of Counsel Claims**

Mr. Ghost Bear asserts various claims of ineffective assistance of counsel.  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. CONST. amend VI.  Claims of ineffective assistance of counsel are properly raised for the first time in a § 2255 motion rather than on direct appeal.  United States v. Evans, 272 F.3d 1069, 1093 (8th Cir. 2001) (citing United States v. Embrey, 250 F.3d 1181, 1184 (8th Cir. 2001)); United States v. Dubray, 727 F.2d 771, 772 (8th Cir. 1984) (noting "normally such a claim cannot be advanced without the development of facts outside the original record") (internal citation omitted).

To succeed on a claim of ineffective assistance of counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington.  Strickland v. Washington, 466 U.S. 668 (1984).  The petitioner must prove that (1) "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." Id. at 687.  If a petitioner cannot prove that he was prejudiced by counsel's errors, then the court need not determine if counsel's performance was deficient.  See DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

To establish that counsel's performance was deficient, petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Mansfield v. Dormire, 202

F.3d 1018, 1022 (8th Cir. 2000) (quoting Strickland, 466 U.S. at 689).

Furthermore, the court must "indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance."

Johns v. Bowersox, 203 F.3d 538, 546 (8th Cir. 2000) (quoting Strickland, 466

U.S. at 689).

Under the second step of the Strickland test, petitioner must prove

prejudice by demonstrating "that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." Williams v. Taylor, 529, U.S. 362, 391 (2000)

(citing Strickland, 466 at 694). "A habeas corpus petitioner, alleging ineffective

assistance of counsel, must show that a particular act or omission fell below

the standard acceptable for attorneys in the same or similar circumstances."

Beard v. Lockhart, 779 F.2d 23, 26 (8th Cir. 1985). A general allegation, such

as that counsel was not "fighting" the defendant's case properly, is insufficient.

Id. A reviewing court evaluates "counsel's challenged conduct at the time of his

representation of the defendant" in order to "avoid making judgments based on

hindsight." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

### 1.    Ineffective Assistance During Plea Negotiations

Mr. Ghost Bear alleges that he received ineffective assistance of counsel

at the plea stage when Mr. Rozan allegedly advised Mr. Ghost Bear that the

trial court was without jurisdiction under the 1868 Treaty of Fort Laramie.

Mr. Ghost Bear theorizes that had his attorney properly researched the issue, he would have concluded that the trial court had jurisdiction. A defendant who pleads guilty is barred from later seeking federal habeas relief based on pre-plea federal law violations unless the violations concern the voluntary and intelligent character of the guilty plea itself. Tollett v. Henderson, 411 U.S. 258, 267 (1973). Mr. Ghost Bear does not argue that his counsel's argument regarding the 1868 Fort Laramie Treaty affected his decision to enter into the plea agreement. Therefore, the argument is not relevant.

Even if the argument were relevant, Mr. Ghost Bear would have to show that he was prejudiced by counsel's deficient performance. Mr. Ghost Bear does not claim that counsel's performance induced him to enter into the plea agreement or that it affected his sentence. Instead, his contentions lie with the enforcement of the agreement, which is discussed below. Mr. Ghost Bear does not demonstrate how he was prejudiced by counsel's actions in filing a meritless motion. As a result, the court finds that Ghost Bear has not met his burden of proof on this issue.

In addition, Mr. Ghost Bear argues in his brief that his counsel was ineffective because he failed to advise Mr. Ghost Bear that his prosecution was barred by the five-year statute of limitations for the prosecution of drug offenses. He argues that the factual basis states that his involvement in the

conspiracy ended in 2001 and that the indictment, in 2006, was outside the statute of limitations as to him. If his attorney had advised him of this fact, Mr. Ghost Bear argues, he would not have pleaded guilty.

The statute of limitations is not limited in its calculation by the facts Mr. Ghost Bear is willing to admit, but rather by the facts the government can prove. The presentence investigation report indicates that Mr. Ghost Bear's involvement in the conspiracy continued at least until 2005. See Presentence Investigation Report, ¶¶ 10-14. Mr. Ghost Bear never objected to these paragraphs in the presentence report. See Docket No. 317. Mr. Ghost Bear has not shown that his counsel was ineffective for failing to advise him that the prosecution was time-barred because the prosecution of him was clearly not time-barred.

**2.      Ineffective Assistance at Change of Plea Hearing**

Mr. Ghost Bear next alleges that he received ineffective assistance of counsel when his counsel "fail[ed] to prepare for the hearing, prepare a Motion for Continuation on Bond having the Trial Court to Instruct Counsel on the motion to file, and by not clarifying with the Court on allowing the Petitioner to make controlled buys, and failure to point out to the Court the Petitioner's substantial assistance up to that point of time[.]" CIV Docket No. 2 at 21.

Mr. Ghost Bear remained released on bond following his change of plea hearing on November 18, 2008. See CR Docket No. 306. Mr. Ghost Bear does

15

not show how the outcome of this matter would have been different if counsel had been better prepared to address Ghost Bear's release pending sentencing or how further discussion at the plea hearing regarding Ghost Bear's cooperation would have altered the outcome. Further, because he remained released on bond post-plea, Mr. Ghost Bear has not shown prejudice, so he cannot claim ineffective assistance of counsel at this stage.

### 3. Ineffective Assistance of Counsel at Sentencing

A § 2255 petitioner who claims that his counsel was ineffective for failing to raise a guidelines issue or objection at sentencing or on appeal must show that, but for counsel's deficient performance, the petitioner would have received a shorter sentence. See King v. United States, 595 F.3d 844, 852-53 (8th Cir. 2010). There are two reasons Mr. Ghost Bear cannot make out a case for ineffective assistance at his sentencing: the inapplicability of the safety valve relief to his case and the operation of the United States Sentencing Guidelines.

### a. Safety Valve Relief Could Not Apply

The court notes that "when a statutory mandatory minimum applies, a district court can only sentence below the mandatory minimum by granting safety-valve relief or through a motion by the Government for substantial assistance." United States v. Sanchez-Gonzalez, 643 F.3d 626, 630-31 (8th Cir. 2011); see also United States v. DeCoteau, 630 F.3d 1091, 1098 (8th Cir.

16

2011).  The "safety-valve" is codified at 18 U.S.C. § 3553(f) and provides as

follows:

> Notwithstanding any other provision of law, in the case of an
> offense under . . . the Controlled Substances Act (21 U.S.C. 841,
> 844, 846) . . . the court shall impose a sentence pursuant to
> guidelines promulgated by the Unites States Sentencing
> Commission under section 994 of title 28 without regard to any
> statutory minimum sentence, if the court finds at sentencing, after
> the Government has been afforded the opportunity to make a
> recommendation, that–
>
> (1)    the defendant does not have more than 1 criminal history
> point, as determined under the sentencing guidelines;
> (2)    the defendant did not use violence or credible threats of
> violence or possess a firearm or other dangerous weapon (or
> induce another participant to do so) in connection with the
> offense;
> (3)    the offense did not result in death or serious bodily injury to
> any person;
> (4)    the defendant was not an organizer, leader, manager, or
> supervisor of other in the offense, as determined under the
> sentencing guidelines and was not engaged in a continuing
> criminal enterprise, as defined in section 408 of the
> Controlled Substances Act; and
> (5)    not later than the time of the sentencing hearing, the
> defendant has truthfully provided to the Government all
> information and evidence the defendant has concerning the
> offense or offenses that were part of the same course of
> conduct or of a common scheme or plan, but the fact that
> the defendant has no relevant or useful otehr information to
> provide or that the Government is already aware of the
> information shall not preclude a determination by the court
> that the defendant has complied with this requirement.

See 18 U.S.C. § 3553(f).

Here the statutory mandatory minimum was ten years imprisonment.

Mr. Ghost Bear received a sentence of twelve years and seven months.  This

court notes that Mr. Ghost Bear was not eligible for safety valve relief due to his leadership role, element 4 above in the safety valve statute. Furthermore, the government represented to the sentencing court that Mr. Ghost Bear had ***not*** provided truthful and complete information or evidence about the drug conspiracy, so element 5 above in the safety valve statute was not met. (The government's failure to file a Rule 35 motion is discussed below.) Therefore, because elements 4 and 5 of the safety valve statute were not met, the sentencing court was required to sentence Mr. Ghost Bear at least to 120 months or 10 years imprisonment, which was the statutory mandatory minimum sentence.

### b.    Acceptance of Responsibility

The other reason Mr. Ghost Bear cannot make out a case for ineffective assistance of counsel at sentencing has to do with the application or nonapplication of the downward adjustment for acceptance of responsibility. The government frames petitioner's arguments regarding acceptance of responsibility as alleging incorrect application of the sentencing guidelines. CIV Docket No. 14 at 17. Accordingly, the government argues this claim is not cognizable in a § 2255 motion. This court, however, reads Mr. Ghost Bear's claims regarding sentencing as alleging that his sentence would have been different had his counsel been effective. Mr. Ghost Bear also argues that Mr. Rozan should have presented evidence in support of mitigation.

Mr. Ghost Bear alleges that he received ineffective assistance of counsel when counsel failed to present evidence and witnesses to show Ghost Bear's acceptance of responsibility at sentencing. Mr. Ghost Bear pleaded guilty to conspiracy to distribute cocaine. He signed a statement of factual basis as part of his plea which stated "Ghost Bear would travel to Denver, Colorado, or would send a courier to Denver to deliver cash and return with cocaine." CR Docket 294.

In his presentence interview, however, Mr. Ghost Bear told the probation officer that "he ha[d] never instructed individuals to buy drugs for him. Rather, other individuals were already making drug runs, and he only provided them money to buy drugs for him since they were going anyway." Presentence Investigation Report, Addendum 1. This statement to the probation officer-- that Mr. Ghost Bear never directed individuals to purchase narcotics for him-- is contrary to the statement of factual basis which Mr. Ghost Bear executed as part of his plea. In fact, it indicates an attempt by Mr. Ghost Bear during his presentence interview to minimize his responsibility and involvement rather than a full acceptance of his responsibility for his role in the conspiracy. Accordingly, the probation officer did not recommend an adjustment for acceptance of responsibility:

> The defendant admitted to the facts set forth by the government; however, he denies sending couriers to purchase drugs for him. He said individuals were traveling to places like Denver to buy drugs already, so he gave them money to pick up drugs for him, or he paid

them back later with cocaine. He indicated he takes full responsibility for the instant offense, and he feels very sorry and ashamed for his behavior. However, he believes he can use his poor decisions to educate young people about drugs and help them from making the same mistakes he has made. He would also like to someday open his own relapse prevention program for Native Americans.

Pursuant to USSG §3E1.1, the defendant qualifies for a decrease in his offense level by truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). **It appears the defendant is falsely denying the full scope of his involvement in the instant offense; therefore, a reduction for acceptance of responsibility does not apply.**

Presentence Investigation Report, ¶¶ 18-19 (emphasis supplied).

Mr. Ghost Bear objected to the presentence report, arguing he qualified for the reduction for acceptance of responsibility. Addendum 1. The sentencing judge addressed this objection at sentencing. For the purposes of the discussion, the court notes the following exchanges which were made at the sentencing hearing.

Rozan: Most importantly, with regard to objection number 1 on the acceptance of responsibility issue, I have discussed this before and recently in detail with my client and we are both of the opinion that there was indeed some direction on his behalf with certain other co-defendants whereby they went to Denver, Colorado, at his direction. That would hopefully clarify the PSR writer's statement that it appears that defendant is falsely denying the full scope of his involvement. He misunderstood to some degree because he could not recollect exactly with certitude when he would have directed someone to go to Denver and exactly who among the other co-defendants it in fact was. But we state to the Court and for the

record that he indeed did do that. Mr. Ghost Bear will validate that and I validate it for him as well on his behalf on the record.

CIV Docket No. 2-14, Sentencing Transcript, 4:14-5:4.

Rozan:      [W]e are withdrawing [the objection] to the extent that he did – he does indeed acknowledge that there were some instances – again, plural – in which he directed people to go to Denver. So there was no false – it wasn't an intentional false representation on his part at the time of either the briefings, or the debriefings, or the interview with the PSR writer.

Court:      Well, you understand, Mr. Rozan, that the burden of establishing acceptance of responsibility is your burden under United States Sentencing Guidelines 3E1.1. Does the government wish to address this matter?

Id. at 6:2-12.

Court:      The acceptance of responsibility under United States Sentencing Guidelines 3E1.1 provides under subparagraph A, if the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by two levels.   In determining whether – then the commentary provides under paragraph 1 in determining whether defendant qualifies under subsection A appropriate considerations include, but are not limited to the following: "Truthfully admitting the conduct comprising offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under section 1B1.3 (Relevant Conduct)," end quote. . . .

Now, based upon the record so far made this morning, this late revelation perhaps could be classified as too little too late. This is an old case. The defendant was originally arrested on January 30, 2007.  The plea was on November 18, 2008, . . . . The defendant was involved in an extensive drug conspiracy. There were five active

21

members of this conspiracy. . . . The defendant himself was highly involved in this conspiracy. In fact, under the role in the offense under 3B1.1(c) it could be found, first of all, that this was an otherwise extensive operation under 3B1.1(a) and one could find, although the Court does not do so, that the defendant should have his base offense level increased by four levels, whereas, the presentence report posits an increase of two levels for defendant's leadership role.

Based upon the assurance of counsel, I believe that obviates all of the objections, assuming the Court finds that the defendant – that he is not entitled to the acceptance of responsibility as simply being too little too late and for years he hid from authorities, his participation in this extensive drug conspiracy which undoubtedly corrupted people, both young and old in Indian country.

Id. at 8:9-10:15.

Mr. Ghost Bear asserts that if his counsel had presented witnesses or evidence, the outcome of the matter would have been different.  As previously set forth, to succeed on a claim of ineffective assistance, Mr. Ghost Bear must show that counsel's performance was deficient and that he was prejudiced by that deficient performance.  See Strickland, 466 U.S. at 687.

Because the sentencing court denied credit to Mr. Ghost Bear for acceptance of responsibility, his total offense level was 34.  He was in criminal history category I.  The offense level of 34 and the criminal history category I yields a sentencing range of 151 to 188 months.  The sentencing court gave Mr. Ghost Bear a sentence at the very bottom of the range–151 months.

Had the sentencing court given Mr. Ghost Bear credit for accepting

responsibility, his total offense level would have been 31. An offense level of 31 and a criminal history category I yields a sentencing range of 108 to 135 months. Because Mr. Ghost Bear did not qualify for safety valve relief, 120 months would have been the effective bottom of his sentencing range at a total offense level 31.

Nevertheless, a sentence of 135 months, at the top of this range, was lower than the 151 months Mr. Ghost Bear actually received. Had Mr. Ghost Bear been given credit for acceptance of responsibility, then, he definitely would have received a sentence lower than what he received because the maximum sentence of a range calculated from a total offense level of 31 is less than the minimum sentence calculated from a total offense level of 34.[6] There is real prejudice then. It falls to Mr. Ghost Bear to demonstrate, then, that his counsel's performance at sentencing "fell below the standard acceptable for attorneys in the same or similar circumstances." Beard, 779 F.2d at 26.

Mr. Ghost Bear argues: "And, the fact is that the Ineffective Counsel could have made an argument with facts that the Petitioner had no post-plea denial of guilt." CIV Docket 2 at 27. The record expressly contradicts this assertion–Mr. Ghost Bear did have a post-plea denial of full responsibility at the presentence interview, which the sentencing judge relied on in withholding

_____

[6]These calculations come from the 2008 United States Sentencing Commission Guidelines Manual.

23

acceptance of responsibility.  Furthermore, Mr. Rozan did advocate strongly on behalf of Mr. Ghost Bear.  He argued that the adjustment due to acceptance of responsibility would impact Mr. Ghost Bear's life.  He attempted to explain the delay in Mr. Ghost Bear's incremental cooperation by citing Mr. Ghost Bear's "fear of the process."  Docket No. 2-14 at 15-16.

Petitioner has not delineated the testimony that Mr. Rozan should have proffered to counteract Mr. Ghost Bear's failure to fully accept responsibility when speaking with the probation officer.  Rather, Mr. Ghost Bear recites facts which were before the trial court at the time of sentencing, such as his cooperation with authorities and his public speaking efforts.  The witnesses listed in affidavits to Mr. Ghost Bear's motion also recite these facts.  See generally Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) ("To affirmatively prove prejudice, a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at [sentencing].") (internal citation omitted).

Additionally, the trial court repeatedly opined that the attempt to withdraw or correct Mr. Ghost Bear's contrary statements to the probation officer was "too little, too late" and also noted that Mr. Ghost Bear hid from authorities.  The judge noted:  "Had your client come promptly to the Court, to the FBI, or DEA, he would not be looking at that amount of time."  CIV Docket

No. 2-14 at 22.  Mr. Ghost Bear cannot shift the blame to his counsel for failing to fully accept responsibility.

The court notes that, at sentencing, Mr. Ghost Bear was given the opportunity to speak directly to the court.  Even then, he did not reaffirm to the sentencing court that he was responsible for sending people to Denver to buy drugs on his behalf, a statement that–had it been made–may have salvaged his acceptance of responsibility credit.  See CR Docket No. 338, at pages 23-28.

The sentencing court asked Mr. Ghost Bear why he did not start cooperating with the government sooner.  Mr. Ghost Bear responded that he was not yet in the "right frame of mind" in the early stages of his criminal case, that he was scared, and that "things came a little bit slower."  Id. at 26-27.  Mr. Ghost Bear specifically disavowed the idea that it was his lawyer's fault that he did not begin cooperating sooner, instead blaming himself and his addiction.  Id. at 27.  The court concludes that Mr. Ghost Bear has not shown that substandard performance on the part of his lawyer was responsible for his failure to receive credit under the Guidelines for acceptance of responsibility.  The failure began with Mr. Ghost Bear's statement to the probation officer during his presentence interview and ended with Mr. Ghost Bear's inability to fully accept responsibility even at sentencing.

In his filings with this court, Mr. Ghost Bear confuses the concept of "acceptance of responsibility" with the concept of cooperation.  The latter is an

issue wholly "within the eye of the beholder," with the "beholder" being the government prosecutor.  If the government prosecutor does not believe that a defendant has fully and honestly cooperated with the government, neither the defendant nor the court can force the government to make a motion under USSG 5K1.1, or a Rule 35 motion.  In arguing that he clearly demonstrated "acceptance of responsibility," Mr. Ghost Bear repeatedly refers to the extent and numerosity of his contacts with the FBI and DEA in his cooperation.  The government did not believe that Mr. Ghost Bear had fully cooperated.  However, government counsel *did* believe that Mr. Ghost Bear had demonstrated acceptance of responsibility and government counsel agreed that the court could grant him credit for acceptance of responsibility under the Guidelines.  See CR Docket No. 338, page 7.  It is striking that government counsel suggested it would not be inappropriate for the sentencing court to hear from Mr. Ghost Bear directly before making up its mind about whether Mr. Ghost Bear indeed had accepted responsibility.  Id.

Acceptance of responsibility does not hinge on one's cooperation with the prosecution.  Rather, it is directed more to the court.  One demonstrates acceptance of responsibility by showing the court, by pleading early, by acknowledging one's full role in the crime, that one understands the full wrongfulness of one's conduct.  This is where Mr. Ghost Bear failed, and it was a personal failing attributable only to him.  In speaking to his presentence

investigation officer, an arm of the court itself, he was unable to acknowledge that he had sent people to Denver to buy drugs. Again, in front of the court at his sentencing hearing, even after the prosecutor had highlighted for Mr. Ghost Bear how important his statements to the sentencing judge were as to this issue, Mr. Ghost Bear was unable to come forth and say to the sentencing judge that he was responsible for sending people to Denver to buy drugs for him.

### c. Mitigation

Mr. Ghost Bear next claims that he received ineffective assistance of counsel at sentencing due to his counsel's alleged failure to investigate and present mitigating evidence at the sentencing hearing. Mr. Ghost Bear contends that had Mr. Rozan presented evidence regarding Mr. Ghost Bear's post-offense rehabilitation, employment history, and the fact that Mr. Ghost Bear was a "first time offender," the trial court may have imposed a lighter sentence. This argument is without merit. As explained above, once the acceptance of responsibility issue was decided adversely to Mr. Ghost Bear, he received the lowest possible sentence–151 months–under the Guidelines. Mitigation evidence would not have changed the Guidelines calculation nor would it have resulted in a lower sentence.

In his motion, Mr. Ghost Bear has not informed this court specifically what information that Mr. Rozan should have presented to the sentencing

judge.  In fact, the very information that he claims was not presented to the trial court was, in fact, included in his presentence investigation report. Paragraphs 2 and 5 discussed Mr. Ghost Bear's post-offense rehabilitation efforts. Paragraphs 46 through 50 discussed his employment history.  The presentence investigation report also provided a review Mr. Ghost Bear's criminal history in paragraphs 30 through 32. Likewise, both the prosecutor and Mr. Rozan discussed Mr. Ghost Bear's post-offense cooperation and rehabilitative efforts.  See CIV Docket 2-14, Sentencing Transcript, 11:14-13:12; 15:20-16:13; 17:5-18:2; 20:7-20.  Additionally, approximately ten letters of support were submitted for the Court's review.  See id. at 20:1-5. Furthermore, Mr. Ghost Bear himself told the sentencing judge of his efforts at the sentencing hearing. See id. at 23:6-26:16; 28:9.  The trial court clearly had the sentencing factors in mind.  See id. at 3:2-4; 28:19-29:18.

The court finds Mr. Ghost Bear's claim fails because he has not shown prejudice.  The low end of the guideline range was 151 months.  Mr. Ghost Bear received 151 months.  This court need not consider whether counsel's performance was deficient because Mr. Ghost Bear cannot demonstrate prejudice, but this court does note that the trial court was presented with mitigation evidence in the form of support letters and testimony at the sentencing hearing.  In sum, Mr. Ghost Bear has not shown that he was prejudiced by counsel's deficient performance.

### 4.    Ineffective Assistance Based on Failure to Compel Government

Mr. Ghost Bear alleges that Mr. Rozan rendered ineffective assistance of counsel by failing to move the trial court to compel the government to file a motion pursuant to USSG § 5K1.1.  Mr. Ghost Bear contends the plea agreement contemplated that the government would move for a downward departure based upon his substantial assistance.  When the government did not move for a downward departure, Mr. Ghost Bear reasons that his counsel should have acted.

Section 5K1.1 of the Guidelines provides for a downward departure based upon a defendant's substantial assistance. It states that "[u]pon motion of the government stating that defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."  U.S.S.G. § 5K1.1. The Eighth Circuit has held that "'[t]he government has no duty to make a substantial assistance motion unless it has entered into a plea agreement with the defendant that creates such a duty.'"  United States v. Davis, 583 F.3d 1081, 1097 (8th Cir. 2009) (quoting United States v. Mullins, 399 F.3d 888, 889-90 (8th Cir. 2005)).  A review of the plea agreement shows no mention of a downward departure under §5K1.1.  The supplement to the plea agreement does, however, discuss a motion for a reduction of sentence under Federal Rule of Criminal Procedure 35(b).

29

Federal Rule of Criminal Procedure 35(b) provides in pertinent part as follows:

> (b)     Reducing a Sentence for Substantial Assistance
>
>      (1)     In General. ***Upon the government's motion*** made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

F.R.Cʀ.P. 35(b) (emphasis added).

Like a motion under § 5K1.1, the decision to file a motion pursuant to Rule 35(b) lies within the discretion of the prosecutor. The plea agreement supplement clearly states that the government retains the discretion to determine whether a Rule 35 motion should be filed. The Court, therefore, only has authority to "grant a remedy if [it] find[s] that the refusal [to file a motion for reduction under Rule 35] was based on an unconstitutional motive." Wade v. United States, 504 U.S. 181, 185-86 (1992). Furthermore, "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." Id. at 186.

In the instant case, Mr. Ghost Bear has not alleged that the government has failed to pursue a Rule 35 motion based upon an unconstitutional motive or based upon reasons " 'not rationally related to a legitimate government interest.' " United States v. Perez, 526 F.3d 1135, 1138 (8th Cir. 2008) (quoting Mullins, 399 F.3d at 890). In fact, the record shows that the government, even

at the time of sentencing, did not believe that Mr. Ghost Bear had provided

substantial assistance:

> I will inform the Court that that debriefing was not an unbridled
> success, to say the least. Mr. Ghost Bear's description of certain
> events we believe not to be accurate, and ultimately he was informed
> we would not be using him as a witness because of that difficulty. He
> then, upon reflection, and, I believe, the work of counsel, attempted
> to provide us with more active information in an attempt to obtain
> either a 5K1.1 or Rule 35 motion based upon events that were still
> ongoing in which his capacity as a witness, which was somewhat
> tarnished, would not be essential. And while he did maintain contact
> with the FBI at times and did provide them with certain information,
> none of those, for whatever variety of reasons, ever came to fruition.
> That is a circumstance that we now believe it is unlikely that we will
> be in a position down the road to file a Rule 35 motion. I have
> informed counsel – and, really, it's merely a statement of the law, but
> that in the event that I were to use Mr. Ghost Bear's proffer, provide
> it to a defendant who then pleaded guilty and he was thereby of
> substantial assistance, or in the event that I called Mr. Ghost Bear
> as a witness, that he certainly would still qualify, but that in my
> judgment I was unlikely to do so, at least in terms of calling him as
> a witness.

CIV Docket No. 2-14, Sentencing Transcript, 11:22-12:22.

The prosecutor went on to state:

> I think that at times Mr. Ghost Bear was perhaps his own worst
> enemy. I think that sometimes he felt he could tell us part of the
> story, but I also think that he did tell us in the end most of the story.
> But it was begrudgingly brought out and as a result, he will not likely
> qualify for the statutory or guideline reductions. . . .

Id. at 13:5-11. As a result, the record indicates a reasonable basis upon which

the government determined that a Rule 35 motion was not warranted.

Based upon the law of the Eighth Circuit and the record before the court,

the court finds that a motion to compel the government to move for a reduction

31

of sentence would not have been successful and therefore, Mr. Ghost Bear has not shown that he was prejudiced by Mr. Rozan's failure to file a motion to compel.

Furthermore, the court finds that Mr. Ghost Bear's claim that his right to effective assistance of counsel post-sentencing due to Mr. Rozan's failure to file a motion to compel the government to move pursuant to Rule 35 for a reduction of sentence must also fail. First, Mr. Ghost Bear did not have a right to counsel with regard to Rule 35 proceedings. See Scott v. United States, 473 F.3d 1262, 1264 (8th Cir. 2007) (holding there is no Sixth Amendment right to counsel regarding post-sentencing cooperation efforts). Even if Mr. Ghost Bear had a right to counsel, he cannot show that he was prejudiced by a failure to file a motion to compel the government to act, because the record shows a legitimate basis for the government's refusal to file a motion under Rule 35.

### 5.     Ineffective Assistance on Direct Appeal

Finally, Mr. Ghost Bear alleges that he received ineffective assistance of counsel during his direct appeal. Mr. Ghost Bear criticizes Mr. Rozan's efforts to appeal the issue of jurisdiction based upon the 1868 Treaty of Fort Laramie, calling it a "dead" issue. Mr. Ghost Bear reasons that Mr. Rozan "was so sure that they would win on appeal, negotiations stopped on any other issues for appeal." As a result, Mr. Ghost Bear asserts that counsel was ineffective because he advised Mr. Ghost Bear to enter into a plea agreement containing a

clause waiving his appeal rights with the exception of jurisdiction.

Once again, Mr. Ghost Bear does not meet his burden of proof.  First, the court notes that a clause waiving appeal rights is routinely included in plea agreements.  The inclusion of such a clause does not alone demonstrate deficient performance.   Additionally, the clause and its consequences were extensively reviewed with Mr. Ghost Bear by the trial court during the plea hearing.  <u>See</u> CIV Docket No. 2-14, Plea Transcript at 6:10-7:1, 8:4-12, 10:18-23.  Thus, the record demonstrates that Mr. Ghost Bear's waiver of appeal rights was knowing and voluntary.  Moreover, Mr. Ghost Bear does not demonstrate how he was prejudiced by this action. He does not specify what issues he would have appealed if allowed or that he would have been successful on appeal. As a result, the court finds that this claim of ineffective assistance is without merit.

### 6.     Disciplinary Sanctions

Mr. Ghost Bear states that had he known about Mr. Rozan's disciplinary sanctions, he would have retained new counsel and proceeded to trial. Attorney Steven Rozan was publicly reprimanded by the Texas bar on October 31, 2007, for the handling of a criminal appeal and Rule 35 proceeding.  <u>See</u> CIV Docket No. 2-19.  The terms of the reprimand did not require Mr. Rozan to inform his current or future clients of the reprimand.  <u>Id.</u>  Mr. Rozan was then suspended from the practice of law in Texas for five years and was required to

report this fact to all current clients on or before September 21, 2009.[7]  See
CIV Docket No. 2-25.

The court notes that Mr. Ghost Bear privately retained Mr. Rozan to
represent him.  Mr. Rozan was not foisted on Mr. Ghost Bear as an involuntary
court-appointed lawyer.  Any failure to conduct due diligence in the hiring of
Mr. Rozan rests with Mr. Ghost Bear alone.  Furthermore, the court notes that
Mr. Ghost Bear entered into the plea agreement in November, 2008, and that
he was sentenced on February 18, 2009.  These events preceded Mr. Rozan's
suspension from the practice of law in Texas in the fall of 2009.

Mr. Ghost Bear does not cite any authority besides the Texas disciplinary
sanction to support his proposition that Mr. Rozan should have informed
Mr. Ghost Bear of his sanctions in Texas.  But even if Mr. Rozan had complied
with the conditions of his suspension, the notification to Mr. Ghost Bear would
have come long after he had already been sentenced.

Mr. Ghost Bear's argument that he would have proceeded to a jury trial
with other counsel lacks merit in that he entered into the plea agreement
approximately nine months ***prior to*** Mr. Rozan's suspension.  In addition, he
contradicts himself when he argues that he demonstrated acceptance of
responsibility by pleading guilty, but would have gone to trial had he known of

---

[7]Mr. Rozan was later disbarred in North Dakota in 2011.  See CIV.
Docket No. 2-22.

Mr. Rozan's disciplinary action. This court declines to decide whether failing to disclose the sanctions constituted deficient performance, finding instead that Mr. Ghost Bear has not demonstrated prejudice.

**D.     Claim that Government Breached Plea Agreement**

Mr. Ghost Bear also alleges the government has violated the plea agreement and requests that the court order specific performance of the agreement. He asserts throughout his petition that the government induced his plea by promising to move for a downward departure. The record, however, belies this contention.

First, neither the plea agreement nor the supplement to the plea agreement mention the government requesting a departure pursuant to § 5K1.1. While a motion for reduction under Rule 35 is mentioned, there is no promise that such a motion would be made by the government. There is no reason to believe such a promise was made outside of the plea agreement. During the plea hearing, the Court engaged in the following colloquy:

Court:          Now, that supplement refers to a Rule 35 motion on page 2. Do you understand that the decision to file a Rule 35 motion, which would be – the effect of which would be a reduction of any sentence, that that is exclusively within the province of the United States Attorney?

Ghost Bear:     Yes, sir, Your Honor.

. . .

Court:          Have any promises or assurances to you been

|            | made to get you to plead guilty?                      |
|------------|-------------------------------------------------------|
| Ghost Bear: | No, sir.                                             |
| Court:      | Have you been threatened in any way?                 |
| Ghost Bear: | No, I have not, sir.                                  |
| Court:      | Are you then acting of your own free will?           |
| Ghost Bear: | Yes, sir.                                             |

CIV Docket No. 2-14, Plea Transcript, 7:22-9:9.

Thus, the court concludes, based upon the testimony of Mr. Ghost Bear while under oath at his change of plea hearing, that the plea agreement contains the fullness of the promises and obligations of both Mr. Ghost Bear and the government.

The plea agreement supplement does provide that the government "will evaluate the extent and nature of the defendant's cooperation[.]"  CR Docket 295.  Then, based upon this evaluation, the government agreed to determine whether Mr. Ghost Bear had provided substantial assistance.  The supplement further provides "[t]he United States Attorney shall be the sole judge as to whether the defendant's cooperation so qualifies.  This section is not a promise or a guarantee that a Rule 35(b) motion will be filed."  Id.  Thus, under the terms of the contract, Mr. Ghost Bear had to meet "all of his obligations under the plea agreement" and provide "full, complete, and truthful information and testimony."  Id.  In exchange, the government would consider moving for a

reduction of his sentence.

As previously discussed, the government stated during sentencing its view of Mr. Ghost Bear's cooperation and the likelihood of a subsequent Rule 35 motion. <u>See</u> CIV Docket No. 2-14, Sentencing Transcript at 11:24-13:11. Thus, the government met its obligation by considering Mr. Ghost Bear's cooperation. The government, however, was not required to request a reduction of Mr. Ghost Bear's sentence. A prosecutor's decision not to make a motion for downward departure on account of a defendant's substantial assistance is unassailable in post-conviction proceedings unless there is an allegation that the prosecutor's refusal to make the motion was unconstitutional or in bad faith. <u>United States v. Wolf</u>, 270 F.3d 1188, 1190 (8th Cir. 2001). "A defendant is entitled to an evidentiary hearing on his allegation of unconstitutional or bad faith refusal, but only if he first makes a substantial threshold showing." <u>Id.</u>

Mr. Ghost Bear further argues that he has met the requirements for a reduction in sentence as set forth in 18 U.S.C. § 3553(e). However, § 3553(e) also requires a motion from the government requesting the reduction. Section 3553(e) states as follows:

> ***Upon motion of the Government***, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

18 U.S.C. § 3553(e) (emphasis added). Thus, the court is without authority to sentence a defendant below a statutory mandatory minimum sentence unless the government should file the motion requesting the reduction. As the court found with regard to Mr. Ghost Bear's claims regarding motions under §5K1.1 and Rule 35(b), the government was not required to file such a motion under the terms of the plea agreement. As a result, the court finds the government did not breach the terms of the plea agreement.

## CONCLUSION

Mr. Ghost Bear's motion and accompanying affidavits conclusively show that he is not entitled to relief. Having reviewed Mr. Ghost Bear's petition, the record, and the pertinent case law, the court finds that Mr. Ghost Bear's ineffective assistance of counsel claims lack merit because he has not demonstrated that he was prejudiced by counsel's deficient performance. Nor has Mr. Ghost Bear's made a substantial threshold showing of any improper government motive for failing to file a Rule 35 motion. The record affirmatively refutes the factual assertions of Mr. Ghost Bear's claims. Based on the foregoing discussion, this court recommends that Mr. Ghost Bear's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [Docket No. 1] be denied in its entirety and that the government's motion to dismiss [Docket No. 13] be granted.

**NOTICE OF RIGHT TO APPEAL**

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. See FED. R. CRIM. P. 59(b); 28 U.S.C. § 636(b)(1)(B). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated May 21, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE